**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

MEDIA HOLDINGS LIMITED;

     Petitioner,

  v.

YICHAO YANG;

     Respondent.

Civil Action No. 1:24-cv-4018

## ORDER

THIS MATTER came before the Court on Petitioner-Judgment Creditor Media Holdings

Limited's ("Petitioner" or "Media Holdings") Local Rule 37.2 Motion (DE 60, the "Motion"). On

consideration of the Motion, arguments of counsel at the conference held on June 9, 2026, and the

relevant law, the Court FINDS and CONCLUDES as follows:

## I. FINDINGS OF FACT[1]

The Court makes the following findings of fact based on matters of record, inferences that

can be reasonably drawn from the record, judicial findings that are appropriate under Federal Rule

of Civil Procedure 37(b)(2)(A)(i) based on Baozhu Li ("Li's") violation of the discovery order and

the general rule that the Court may presume that allegations are true and that a defense is set up in

bad faith when the defending party (in this case, Li) refuses to produce evidence that would justify

the defense. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 351 (1909); *Int'l Union, United*

*Auto., Aerospace & Agr. Implement Workers of Am. (UAW) v. NLRB*, 459 F.2d 1329, 1336 (D.C.

---

[1] Any Findings of Fact that are more appropriately deemed Conclusions of Law are incorporated by reference into the Court's Conclusions of Law.

Cir. 1972) (noting that it is "common sense" that "when a party has relevant evidence within his control which he fails to produce, that failure gives rise to an inference that the evidence is unfavorable to him").

### A.    Background

1.    Respondent-Judgment Debtor Yichao Yang ("Debtor" or "Yang") is involved in international finance, DE 39-1 ¶ 4–6, and was the Chief Financial Officer ("CFO") of Yuanyu Advertising (China) Co., Ltd. ("Radio"). *Id.* ¶ 7. In his role as CFO, Debtor negotiated a multi-million-dollar investment from Media Holdings. *Id.*

2.    Radio and Yang breached their obligations under the investment agreements, which resulted in a $103,038,846.26 arbitration award in favor of Media Holdings. *See* DE 32-2 at 3–4, 10–11. This Court previously confirmed and entered judgment on the award. *See* DE 37.

3.    Debtor has not paid any portion of the judgment. DE 39-1 ¶ 35; DE 32 ¶ 9.

4.    After this Court entered judgment on the award, Petitioner began eliciting discovery from third parties in an effort to collect on the judgment. *See* DE 39 at 3. That discovery led Media Holdings to a brokerage account at Interactive Brokers, LLC ("Interactive Brokers") that is held in Li's name. *See id.* The Court finds that Li is holding the assets in this account for Yang's benefit.

5.    Li and Yang divorced in 2007 but hold themselves out as married. *See* DE 49 at 3–4.

6.    Other than teaching piano lessons as a hobby, Li has no known source of income except for funds she received from Debtor. *See* DE 39-1 ¶¶ 10, 11; DE 53 at 14:24–15:6; DE 49-1 at 7.

7.    Li does not have any financial or investment background. *See, e.g.*, DE 39-1 ¶ 12; DE 49-1 at 7.

8.    In addition to holding themselves out as married, Li and Yang continue to have financial interactions.

9.    They lived together as recently as 2016 (nine years after they divorced). *See* DE 39-3 at 36:2–15. The Court also finds that they continue to live together at least part of the time. During a deposition, Li and Yang's daughter testified that Li's address was ███████████ Shanghai, Pudong New District. *See* DE 39-3 at 54:8–55:12. In her discovery responses in this case, Li stated that Yang's current residence is also ███████████ Shanghai, China. *Compare id.* at 54:8–55:12, *with* DE 49-1 at 7.

10.    Li also added Yang as an authorized user on a U.S. Bank Account held in her name, *see* DE 39-4 at 2, so that he could obtain a credit card to use in the United States in February 2020 when he came to visit Li and their children. *See* DE 53 at 12:15–22.

11.    Discovery in this case showed that in October 2021, Li told an acquaintance, FangFang Zhang ("Zhang"), "[m]aybe another 1,000,000 early next year," immediately followed by a message stating, "[t]his is what my husband sent me." *See* DE 52-1 at 4.

12.    Yang opened an account in his name at Interactive Brokers on February 4, 2020. *See* DE 39-2 at 2; *see also* DE 39-1 ¶ 16. In 2020, however, the situation between Yang and Petitioner was deteriorating. *See* DE 5-3 at 15–17; DE 39-1 ¶ 8.

13.    On February 5, 2020, an Interactive Brokers' account was opened in Li's name (the "Interactive Brokers Account") using the same e-mail Yang used to open his Interactive Brokers account. *See* DE 39-5 at 2; DE 39-1 ¶¶ 18–19. The Court presumes that Yang opened this account in Li's name.

14.    The account in Li's name was funded. *See* DE ¶ 39-1 ¶ 21. The account in Yang's name was not. *See id.* ¶ 20.

15.    The investments in the Interactive Brokers Account were complex and all trades were self directed. *See id.* ¶ 29; DE 39 at 5. Given the complexity, it is likely that Yang, with his financial background, managed the Interactive Brokers Account.

16.    Shortly after the arbitration between Media Holdings and Yang, in Fall 2021 and January 2022, the bulk (over $1 million) of the assets in the Interactive Brokers Account were sold and the proceeds were distributed back to U.S. Bank account that was titled in Li's name—which Yang also previously used at least temporarily, as found above. DE 39-1 ¶¶ 24-26. The Court finds that this distribution constituted a gratuitous transfer of Yang's assets to Li without consideration, executed with the intent to evade Yang's debt obligations to Media Holdings.

17.    $800,000 of the proceeds were then transferred to Zhang. *See id.* ¶¶ 23-27. Discovery showed that Zhang transferred an equivalent sum in Chinese RMB to an account at the Industrial Bank in China. *See* 52-1 at 3.

18.    The net effect of the transactions with Zhang (giving Zhang U.S. dollars in exchange for equivalent transfers in China of Chinese RMB) was to transfer the proceeds from the Interactive Brokers Account to a Chinese bank account. *See* DE 53 at 12:23–25.

19.    The Court concludes that the assets in the Interactive Broker Account belong to Yang even though the account is titled in Li's name only.

20.    The Court concludes that Li may be holding other assets for Yang in China or in other countries outside of the Court's jurisdiction, including but not limited to the proceeds of the Interactive Brokers Account that were transferred to China. The Court concludes that discovery into Li's finances and assets titled in her name is the proper subject of discovery but about which Li refused to provide information.

B.    **Procedural History**

i.    Motion for Turnover

21.    On May 29, 2025, Petitioner moved to partially recover on its judgment through an order compelling turnover ("Motion for Turnover") of the balance in the Interactive Brokers Account. *See* DE 38.

22.    Petitioner later consented to Li's counsel's motion to stay Li's deadline to respond to the Motion for Turnover until Petitioner finished conducting discovery on Li. *See* DE 43 ("Motion to Stay"). The Motion to Stay represented that Li "agreed to cooperate in written discovery." *See id.* The Court granted the Motion to Stay and ordered Petitioner and Li to file a status report by September 25, 2025. *See* DE 44. Petitioner and Li proposed that Li's response to the Motion for Turnover be set for 30 days after the close of discovery, *see* DE 45 at 1, and the Court entered an order to that effect. *See* DE 46.

23.    Petitioner served its first discovery requests ("First Discovery Requests") on Li on September 3, 2025, largely seeking information concerning Li's assets to determine what she may be holding for Yang. *See* DE 49-1 at 1–5.

24.    After granting two requests for extensions of time to respond to the First Discovery Requests, on October 24, 2025, Li submitted two pages of interrogatory responses and, in response to Petitioner's requests for production, a single document (Li's divorce certificate). *See* DE 49-1 at 6–14.

25.    Petitioner's First Discovery Requests sought communications with Yang and others about assets (DE 49-1 at 3, Requests for Production 3 and 4), account statements for financial accounts that Li owns or has signing authority over (DE 49-1 at 3, Request for Production 7), documents showing asset transfers between Li and Yang (DE 49-1 at 3, Request for Production

8), communications with Zhang (DE 49-1 at 4, Request for Production 20), documents showing asset transfers with Zhang (DE 49-1 at 4, Request for Production 21), identification of financial accounts Li owns or has authority over (DE 49-1 at 2, Interrogatory 5), names of persons who had access to Li's financial accounts (DE 49-1 at 2, Interrogatory 6), transactions received or sent in excess of $15,000 (DE 49-1 at 2, Interrogatory 7), the source of money used to fund the Interactive Brokers Account and who such money was acquired from (DE 49-1 at 2, Interrogatory 8), and the name and address of persons who provided Li with advice regarding the management of her assets (DE 49-1 at 2, Interrogatory 9).

26. To most of these requests, Li responded "[n]one." *See* DE 49-1 at 9–14. This was a false statement given that prior discovery showed that these assets and communications existed. *See, e.g.*, DE 52-1 at 3–4

27. Li also refused to sit for a deposition. *See* DE 52-1 at 12.

28. On November 12, 2025, Petitioner served its second set of discovery requests ("Second Discovery Requests") on Li. *See* DE 49-2. In the Second Requests, Petitioner requested a copy of Li's passports (including any U.S.-issued passport) so that Petitioner could track Li's travel and depose her when she is outside of China. *See* DE 49-2 at 2. Petitioner also requested to inspect Li's cell phones, tablets, and computers. *See id.* Li refused to comply with either request, objecting that the requests were "intrusive." *See id.*

29. On December 12, 2025, Petitioner moved for a pre-motion discovery conference. *See* DE 47.

30. The Court held a discovery conference on January 13, 2026 (the "First Discovery Conference"). *See* DE 53. At the conference, the Court heard arguments from Petitioner's counsel as to why Petitioner's discovery requests were reasonable to seek information about Yang sharing

assets with Li and why Li did not believe discovery was necessary. *See id.* at 3:3–15:6. The Court asked Petitioner's counsel what would happen if the Court ordered Li to respond to discovery and Li did not comply. *See id.* at 15:9–12. Petitioner's counsel responded that "if she doesn't comply after there is an order compelling discovery, the Court gets to set what the sanction is, and ultimately I think it is the forfeiture of the defense to the Interactive Brokers account." *See id.* at 15:13–16.

31.     On March 16, 2026, the Court entered its Order Compelling Disclosures. *See* DE 55. Under the Order Compelling Disclosures, Li was required to respond, within 30 days, to each of the discovery requests that Petitioner had identified as Li having provided deficient responses to. *See id.* It further provided that if Li continued to respond "none" in response to Document Requests 3, 4, and/or 8 in Petitioner's Discovery Requests to Baozhu Li, then Li would also be required to comply with Petitioner's First Request for Inspection and allow Petitioner, through counsel, to inspect and copy data stored on any cell phones, tablets, or computers in Li's possession, custody, or control. *See id.* ¶ 5.

ii.     Order Compelling Disclosures

32.     Li did not comply with the Order Compelling Disclosures by the 30-day deadline provided in the order and did not issue any responses to Petitioner following the order. *See* DE 60 at 1.

33.     Instead, on the day Li's responses were due, Li's counsel, Kerry Kaltenbach ("Kaltenbach"), filed a "Declaration of Counsel in Opposition to Petitioner's Motion for Turnover." *See* DE 56 (the "Kaltenbach Declaration").

34.     The Kaltenbach Declaration included a number of quotations, attributable to Li, that the Court finds cast Li's credibility in doubt. For example, Li is quoted as saying "[t]he small

amount of money tied to the stock is also my remaining retirement income for the rest of my life."
*See id.* ¶ 14. However, Li had withdrawn approximately $1,750,000 from the Interactive Brokers Account. *See* DE 39-1 at 4. For example, over a three-week span, Li transferred $1 million from the Interactive Brokers Account to her U.S. Bank account, *see* DE 39-6 at 25, and subsequently transferred at least $800,000 of this to China. *See* DE 39-1 ¶¶ 24-27. Similarly, her own counsel previously told the Court:

> [Media Holdings' counsel argues] that if [Li is] employed as a piano teacher, she cannot possibly have any money of her own, which is just not accurate. I can tell you the impression I get, she is the type of elite woman who wants to be a piano teacher, but doesn't have to be.

DE 53 at 15:2–6. Li also told Zhang that she owned "two sets of commercial housing" and that the money in her U.S. Bank account "won't be used for a while. DE 52-1 at 3.

35.     The same day, Li's counsel also filed a Motion to be Relieved as Counsel for Non-Party Baozhu Li ("Motion to Withdraw"), and a declaration in support of the same. *See* DEs 57, 57-1.

36.     On April 16, 2026, the Court granted the Motion to Withdraw and ordered that "Li shall have new counsel appear on her behalf or file a letter on the docket indicating that she will proceed *pro se* by May 14, 2026." DE 58. In the Court's April 16, 2026 order, the Court also stayed the case for 30 days, advised Li of a *Pro Se* Law Clinic, and ordered that her former counsel provide a copy of the order to Li. *See* DE 58. On April 21, 2026, Kaltenbach filed a declaration providing that, on April 17, 2026, Kaltenbach served a copy of the Court's April 16, 2026 order on Li. *See* DE 59.

37.     In violation of the Court's April 16, 2026 order, Li has not filed a letter indicating that she will proceed *pro se* and, since her former counsel withdrew, no new counsel has appeared on her behalf.

38.     On May 19, 2026, Petitioner moved for a pre-motion discovery conference to address the need for sanctions, and served the motion on Li. *See* DE 60. The Court granted this motion and scheduled a conference for June 9, 2026. *See* DE 61.

39.     Counsel for Petitioner presented arguments at the conference on June 9, 2026 (the "Second Conference"). Li did not appear at the conference nor did she have counsel appear on her behalf.

## II.     CONCLUSIONS OF LAW[2]

40.     Courts have "an inherent power to sanction bad faith conduct." *Pearson v. Coughlin*, No. 92 CIV. 1869, 1995 WL 366463, at *3 (S.D.N.Y. June 20, 1995) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)). Because "discovery orders are meant to be followed," *Southern New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quotation omitted), Federal Rule of Civil Procedure 37 also gives courts power to impose sanctions for failing to comply with discovery orders.

### A.  Sanctions are appropriate

41.     When appellate courts review whether a district court exercised proper discretion in imposing sanctions under Rule 37, the court considers "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Southern New Eng. Tel. Co.*, 624 F.3d at 144 (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). "These factors are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions." *Id.* at 144.

---

[2] Any Conclusions of Law that are more appropriately deemed Findings of Fact are incorporated by reference into the Court's Findings of Fact.

42. The Court finds that Li willfully disobeyed the Court's Order Compelling Disclosures, lesser sanctions would not compel Li to comply, Li's non-compliance has not waivered, and Li was warned of the consequences of not complying with the order and still failed to comply. Thus, sanctions are appropriate.

    i.    <u>Willfulness</u>

43. "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Cadet v. All. Nursing Staffing of N.Y., Inc.*, No. 21 CIV. 3994, 2024 WL 81487, at *8 (S.D.N.Y. Jan. 8, 2024), *appeal dismissed*, No. 24-315, 2024 WL 5392746 (2d Cir. June 18, 2024) (quotation omitted).

44. The Order Compelling Disclosures is clear in stating that Li needs to comply with certain discovery requests and it lists the specific requests. Li never expressed confusion about the requests.

45. Li understood the order because, through the Kaltenbach Declaration, Li acknowledged that "[t]here is an outstanding order from this Court that Ms. Li provide additional discovery to Petitioner." *See* DE 57-1 ¶ 3.

46. Further, Li has cited no factors beyond her control that prevent her from providing the information she was ordered to provide.

    ii.    <u>Warning</u>

47. Li was warned that Petitioner would seek sanctions if Li did not comply with discovery.

48. Counsel for Petitioner and counsel for Li both attended the First Discovery Conference. At the First Discovery Conference, the Court asked Petitioner's counsel, "[i]f [Li]

doesn't comply, then what happens? Where does this go?" *See* DE 53 at 15:2–12. Petitioner's counsel responded that "if she doesn't comply after there is an order compelling discovery, the Court gets to set what the sanction is, and ultimately I think it is the forfeiture of the defense to the Interactive Brokers account." *Id.* at 15:13–16.

49.     Further, Petitioner moved for a pre-motion discovery conference and addressed in the motion that it was seeking to move for sanctions and addressed exactly what sanctions it was seeking. *See* DE 60. Petitioner served this motion on Li. *See id.* at 5. Petitioner also mailed a copy of the order scheduling the conference to the address that Li's counsel provided for Li when he withdrew and emailed a copy to the email address listed on the Interactive Brokers Account. Petitioner had previously sent a copy of the Motion for Turnover to this same email address, and soon after sending it, Li retained counsel. Petitioner's counsel also requested that Li's former counsel, who, after withdrawing from representing Li and two days after the Second Conference was ordered, subsequently appeared in this case on behalf of his law firm, *see* DEs 57, 61, 63, do the same. Li's former counsel represented that he communicated with Li via WeChat and provided Petitioner's counsel with Li's WeChat ID so that Petitioner's counsel could send a copy of the order to Li through WeChat, as a third method of service. The username Li's former counsel provided no longer exists as a valid ID on WeChat. Despite providing Li with notice by mail and email, Li did not appear at the conference.

### iii.     Lesser Sanctions

50.     Lesser sanctions are unlikely to encourage compliance where warnings of more severe sanctions have not compelled the defiant party to comply.

51.     The Court has considered lesser sanctions and determined that lesser sanctions are not appropriate on the record.

52.     Warning Li with lesser sanctions would be futile because Petitioner already warned that it would seek turnover of the Interactive Brokers Account, *see* DE 53 at 15:13–16, and this warning has not compelled Li to comply. The Court also previously ordered that Li allow Petitioner to inspect and copy data stored on Li's cell phones, tablets, or computers, if Li did not adequately respond to certain of Petitioner's discovery requests, *see* DE 55 ¶ 5, but this did not compel Li to comply.

    iv.     Duration of Non-Compliance

53.     Li has made no attempts to comply with the Order Compelling Disclosures.

54.     No additional time to comply will compel Li to comply when Li has already evidenced a persistent unwillingness to comply.

**B.     Sanctions**

55.     Severe sanctions "must be available" in appropriate cases, not only to penalize the offending party, but to deter other parties who may be tempted to engage in similar conduct in the absence of a deterrent. *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

    i.     Turnover of Interactive Brokers Account

56.     "[D]ismissal or default is justified if the district court finds that the failure to comply with discovery orders was due to "willfulness, bad faith, or any fault" of the party sanctioned. *Southern New Eng. Tel. Co.*, 624 F.3d at 144. Courts may also impose any sanctions that are "just." *See Miltope Corp. v. Hartford Cas. Ins.*, 163 F.R.D. 191, 194 (S.D.N.Y. 1995) (citations omitted).

57.     Li's defiance of the Order Compelling Disclosures and her unwillingness to engage in any meaningful discovery evidence willfulness and bad faith and warrant turnover of the

Interactive Brokers Account. Li should not be permitted to benefit from her own refusal to comply. Were this Court to allow Li, without consequence, to withhold discovery necessary for Media Holdings to prove its claim, it would encourage other parties to engage in similar conduct.[3]

    ii.  <u>Judicial Findings</u>

58.    When a litigant fails to comply with a court order, the court has discretion to "direct[] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims." Fed. R. Civ. P. 37(b)(2)(A)(i). In other words, a court is permitted "to presume from a party's willful failure to answer a discovery request relating to a particular issue that the facts of that issue are established against the noncompliant party." *Southern New England Tel. Co.*, 624 F.3d at 147.

59.    In light of Li's failure to comply with discovery, including, but not limited to, discovery seeking communications with Yang about assets, the unrebutted Findings of Facts set forth in this Order are deemed established, including, but not limited to, that:

    a.  Li has no independent source of wealth separate from assets received from Yang;

    b.  The Court ordered Li to turn over financial information directly related to Media Holdings' allegations that she is holding assets for Yang, and Li refused;

    c.  Li lacks credibility;

    d.  Li was holding assets in the Interactive Brokers Account for Yang;

---

[3] The Court could find that this same relief is alternatively warranted by ruling on Petitioner's Motion for Turnover (DE 38). Li was required to respond to the Motion for Turnover within 30 days of the close of discovery. *See* DE 46. Li has not produced discovery since December 11, 2025, *see* DE 49-2, and thus discovery effectively closed on December 11, 2025. Li's failure to respond to Petitioner's Motion for Turnover within 30 days of such date alternatively warrants granting of Petitioner's Motion for Turnover.

    e.  Yang gratuitously transferred proceeds from the Interactive Brokers Account to Li without consideration;

    f.  Li moved at least $800,000 from the Interactive Brokers Account to China; and

    g.  Li could be holding other assets for Yang, or may have received additional gratuitous transfers from Yang, making her finances and assets within the proper scope of discovery.

    iii.  <u>Contempt</u>

60.    Regarding contempt, the Court makes preliminary findings as a formal contempt hearing cannot be held under Local Civil Rule 83.6 until Li returns to the jurisdiction. These findings justify the pre-hearing arrest order set forth below to secure Li for a formal contempt hearing if she returns to the jurisdiction while continuing to willfully ignore her discovery obligations. These findings are without prejudice to Li's right to a final contempt hearing, de novo, under Local Rule 83.9(b).

61.    Federal Rule of Civil Procedure 37(b)(2)(A)(vii) permits courts to treat as contempt of court the failure to obey a court order.

62.    A disobedient party may be held in contempt when "(1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply." *In re Markus*, 607 B.R. 379, 395 (Bankr. S.D.N.Y. 2019), *aff'd in part, vacated in part, remanded sub nom. Markus v. Rozhkov*, 615 B.R. 679 (S.D.N.Y. 2020) (citations omitted). "[A] finding of bad faith, willfulness, or substantial fault is not a prerequisite to a finding of civil contempt." *Id.*

63.    The Order Compelling Disclosures and proof of Li's noncompliance with the order are clear. The Kaltenbach Declaration concedes that Li had not complied with the Order

Compelling Disclosures as of April 15, 2026—the date by which the Court ordered Li to comply. *See* DE 56 ¶ 15; DE 55. And Li has made no attempts since to comply.

64.     Media Holdings should be entitled to inspect the information requested in Petitioner's Requests for Production of Documents and depose Li as to her financial relationship with Yang to uncover any other assets Li may be holding for Yang. Li's continued defiance interferes with Media Holdings' reasonable collection efforts.

65.     Merely securing the turnover of the Interactive Brokers account does not absolve Li of her discovery obligations. As the Court found, she may be holding assets for Yang in China and that is the proper subject of discovery.

66.     Compliance with the discovery orders is not impossible, and she is capable of complying with her discovery obligations. She can avoid contempt and incarceration by complying with the discovery requested in the Order Compelling Discovery.

67.     The sanction of contempt is intended to compel the present and future compliance with this Court's discovery orders, and for no other purpose. Following notice and a hearing in compliance with Local Rule 83.6, contempt and incarceration to compel compliance would be appropriate if Li does not comply with her discovery obligations sooner.

68.     Daily civil penalties and other sanctions are unlikely to ensure compliance with this Court's discovery orders. Li is a Chinese citizen who resides in China. Forfeiture of more than $200,000 in the Interactive Brokers Account did not cause her to cooperate, and she is unlikely to remain within the jurisdiction of this Court for sufficient time to compel cooperation. To that end, confinement until the contempt is purged would be a remedy the Court would strongly consider during a final contempt hearing.

69.     Local Civil Rule 83.6 directs that a third-party cannot be held in civil contempt and incarcerated until the third party has been served with a copy of Local Civil Rule 83.6 in the manner provided for by the Federal Rules of Civil Procedure for the service of a summons. *See* L. Civ. R. 83.6(a). As set forth in DE 40, Li was provided actual notice of these proceedings through a variety of means and she appeared and defended her interest in the suit. As found in this Order, she was provided notice of the conference leading to this Order through a variety of means. However, to the extent that Li is entitled to a show cause hearing and service under Federal Rule of Civil Procedure 4 before being arrested, her risk of flight before conducting the contempt hearing is severe. Moreover, given the difficulties of Rule 4 service in China where Li resides, it is unlikely that she can be served pursuant to Rule 4 to have the show cause hearing if and until she returns to the jurisdiction of the United States such that she can be personally served with this Order.

70.     Given the necessity of ensuring that Li does not remove herself from the jurisdiction in the event that she returns to the United States, pre-contempt hearing arrest is appropriate.

iv.     Attorneys' Fees

71.     When a party disobeys a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

72.     Li cites no valid reason for her failure to comply with the Order Compelling Disclosures. Thus, Li, the disobedient party, must pay the reasonable expenses, including attorney's fees, caused by her refusal to comply with discovery.

It is SO ORDERED that:

1.  The Motion for Turnover is Granted and Interactive Brokers, LLC shall release the funds, up to $103,038,846.26 plus pre- and post-judgment interest, in the Interactive Brokers, LLC account ending in -5139 and held in the name Baozhu Li to Petitioner Media Holdings Limited within five (5) business days of the date of this order.

2.  Petitioner is awarded its reasonable fees and expenses, which will be entered as a judgment against Baozhu Li. Petitioner shall file a fee application and supporting materials twenty (20) days after entry of this order, after which the Court will address the amount of fees and expenses awarded to Petitioner.

3.  Baozhu Li is subject to pre-hearing arrest pending a contempt hearing.

4.  The United States Marshal is directed to arrest Baozhu Li and confine her until the earlier of (1) when she responds to all Petitioner's Requests for Production in DE 49-1 and DE 49-2 by providing Petitioner with the requested documents; (2) a final contempt hearing under Local Civil Rule 83.6; or (3) when she posts bond in the amount of $2,000,000.

5.  A certified copy of this Order shall constitute sufficient warrant and authority for the United States Marshal to arrest and confine Baozhu Li pursuant to Local Rule 83.6(c)(5). When serving this Order on Baozhu Li, the United States Marshal is further directed to serve her with a copy of Local Rule 83.6.

SO ORDERED.

June 30, 2026

New York, New York

_____

J. PAUL OETKEN
United States District Judge